IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STARPAY.COM, L.L.C., an Oklahoma Limited Liability Company; and VIMACHINE, INC., a Delaware Corporation, | § § § § | |
| Plaintiffs, | § § | Civil Action No. 3:03-CV-976-L |
| v. | § § | |
| VISA INTERNATIONAL SERVICE ASSOCIATION and VISA USA, both d/b/a VISA, | § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court are: the Report and Recommendation of the United States Magistrate Judge, filed January 4, 2005 ("First Report"); Plaintiffs' Objections to the Magistrate's Report and Recommendation, filed June 19, 2005; Defendants' Objections to Certain Portions of Magistrate Judge Sanderson's January 4, 2005 Report and Recommendation, filed January 19, 2005; Plaintiffs' Reply to Defendants' Objections Regarding Judge Sanderson's Claim Construction Report and Recommendations, filed February 7, 2005; Defendants' Reply to Plaintiffs' Objections to Magistrate Judge Sanderson's January 4, 2005 Report and Recommendation, filed February 7, 2005; Report and Recommendation of the United States Magistrate Judge, filed January 19, 2006 ("Second Report"); Plaintiffs' Objections to Magistrate Sanderson's Renewed Report and Recommendations Regarding Claim Construction, filed February 6, 2006; Defendants' Objections to Certain Portions of Magistrate Judge Sanderson's January 19, 2006 Report and Recommendations, filed February 6, 2006; Plaintiffs' Reply to Defendants' Objections Regarding Judge Sanderson's Claim

Construction Report and Recommendations, filed February 27, 2006; Defendants' Response to Plaintiffs' Objections to Magistrate Judge Sanderson's January 19, 2006 Report and Recommendations, filed February 27, 2006; Defendants' Supplemental Brief on Claim Constructions in View of a Recent Decision by the U.S. Court of Appeals for the Federal Circuit, filed May 8, 2007; and Plaintiffs' Supplemental Claim Construction Brief, filed June 5, 2007.

Having carefully considered the First Report and Second Report, parties' objections, responses[1] to objections, supplemental briefing, record, and applicable law, for the reasons set forth below, the court determines that the magistrate judge's findings and conclusions are correct in part. Accordingly, the court **accepts in part and rejects in part** the magistrate judge's recommendations.

## I.    Factual and Procedural Background

This is a patent infringement suit brought by Plaintiffs starpay.com, L.L.C. ("starpay") and VIMachine, Inc. (VIMachine") (sometimes collectively referred to as "Plaintiffs") against Defendants Visa U.S.A., Inc. and Visa International Service Association (collectively, "Defendants" or "Visa").  Plaintiff VIMachine is the owner of United States Patent No. 5,903,878 (the "'878 patent"), issued on May 11, 1999.[2]  Starpay is a licensee of VIMachine.  Defendants are affiliated associations comprised of their member financial institutions and are the "world's leading provider of payment card services."  Ans. ¶ 169.

---

[1]The parties at times refer to their responses to objections as "replies" and at times as "responses." For purposes of clarity, the court will refer to all responses to objections as "responses," not "replies."

[2]Inventions are created by individuals, not corporations.  *Beech Aircraft Corp. v. EDO Corp.*, 990 F.2d 1237, 1248 (Fed. Cir. 1993).  The inventor of the '878 patent are Kirit Talati and Yashvant Jani, principals of VIMachine.  For simplicity, the court uses "VIMachine" as shorthand for the inventors who assigned their patent to VIMachine.

The '878 patent relates to the on-line payment transaction field and has as one goal providing increased security for internet transactions. Visa uses an internet verification system, known as Visa Payer Authentication System ("VPAS"). In or around April 2000, Visa filed a provisional patent application related to the VPAS technology. Plaintiffs allege that Visa has infringed, and continues to infringe, the '878 patent by making, selling, offering for sale, and using software and processes embodying the '878 patent in violation of 32 U.S.C. § 271(a). Visa denies any infringement and maintains that the patent in suit is invalid for a variety of reasons.

Pursuant to a standing order of reference, on July 28, 2003, this case was referred to United States Magistrate Judge Wm. F. Sanderson, Jr. for pretrial management. The parties filed extensive briefs, and the magistrate judge held two hearings related to the issue of construction of various claims of the '878 patent. On January 4, 2005, the Report and Recommendation of the United States Magistrate Judge (the "First Report") was filed. On January 19, 2005, both sides filed objections to the First Report, and responses to these objections. Visa also filed a motion to reconsider, which the magistrate judge summarily denied without prejudice. In August 2005, Plaintiffs and Defendants filed supplemental briefs regarding the impact of the Federal Circuit's *en banc* decision in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005).[3] The magistrate judge held a hearing concerning

---

[3]In *Phillips*, the Federal Circuit reversed a decision of the United States District Court for the District of Colorado. The district court, after construing the disputed claim terms, granted summary judgment of noninfringement in favor of the defendant. Following the plaintiff's appeal, a divided panel of the Federal Circuit affirmed the lower court's decision. *Phillips v. AWH Corp.*, 363 F.3d 1207 (Fed. Cir. 2004). The Federal Circuit reheard the case *en banc* to uniformly address the role of dictionary definitions and other extrinsic evidence in claim construction. The court held that, although dictionary definitions were authorized for educating the court and as an unbiased source of information for construing claims, the intrinsic record, which includes the patent claims, specification and prosecution history, is the primary and controlling source for claim construction. In so ruling, the court recognized that its decision in *Texas Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193 (Fed. Cir. 2002), appeared to elevate the role of extrinsic evidence to the extent that the specification served as a mere check on the dictionary meaning of the disputed claim term. The court in *Phillips* was concerned that the *Texas Digital* holding might lead a court to adopt the dictionary definition divorced from the intrinsic record, permitting a patentee to circumvent the statutory requirement to particularly describe and claim the invention.

the parties' supplemental briefing on November 2, 2005. On January 19, 2006, the magistrate judge

filed a second Report and Recommendation (the "Second Report"), affirming the claim construction

in the First Report, stating that he did "not find any reason to change any portion of [his First

Report], in light of the Federal Circuit's decision in *Phillips*[.]" Second Report at 3. The parties

filed objections to the Second Report, as well as responses to these objections.[4]

On March 13, 2007, Defendants sought leave of court to file their "Supplemental Brief on

Claim Construction in View of a Recent Decision by the U.S. Court of Appeals for the Federal

Circuit." On May 7, 2007, the court granted Defendants' motion. On May 9, 2007, Plaintiffs filed

an unopposed motion for leave of court to file a response to Defendants' supplemental brief, which

the court granted on May 31, 2007. On June 5, 2007, Plaintiffs filed their response.

## II.     Legal Standard

Patent infringement is the unauthorized making, using, selling, offering to sell, or importing

into the United States of any patented invention during the term of the patent. 35 U.S.C. § 271(a).

Patent infringement analysis involves two steps. In the first step the court determines the proper

construction of the patent claims by establishing, as a matter of law, the scope and boundaries of the

subject matter that is patented. *See Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 976 (Fed.

---

[4]On November 9, 2005, Visa filed a Motion for Leave to File Supplemental Brief Addressing a New Claim Construction Argument Raised by Starpay, asserting that Plaintiffs had raised new arguments concerning certain terms at the November 2, 2005 hearing. On February 7, 2006, the court issued an order recommitting the matter to the magistrate judge for the purpose of addressing Visa's motion for leave to file a supplemental brief, which was not considered in the Second Report. On February 8, 2007, the magistrate judge filed a Supplemental Report and Recommendation, stating that the Second Report was limited to addressing the role, if any, of dictionaries in his First Report, thereby mooting Visa's motion for leave to file supplemental brief. No objections were filed. Whether Visa's motion for leave to file a supplemental brief was properly denied as moot is irrelevant at this juncture, since Visa raises the very same arguments in its "Response to Plaintiff's Objections to Magistrate Judge Sanderson's January 19, 2006 Report and Recommendations," filed February 27, 2006, that it sought to raise in the proposed supplemental brief. These arguments, therefore, are before the court. *See infra* note 10.

Cir. 1995) (en banc), *aff'd*, 517 U.S. 370, 384-85 (1996). In the second step the trier of fact compares the properly construed claims to the allegedly infringing device(s) and determines whether there has been an infringement. *Id*. The issue before the court at this time is construction of various claims of the '878 patent.

Claim construction "is the judicial statement of what is and is not covered by the technical terms and other words of the claims." *Netword, LLC v. Centraal Corp.*, 242 F.3d 1347, 1352 (Fed. Cir. 2001). *See also United States Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir.), *cert. denied*, 522 U.S. 950 (1997). The claims of a patent are the numbered paragraphs at the end of the patent that define the scope of the invention and thus the scope of the patentee's right to exclude others from making, using, or selling the patented invention. *See Astrazeneca AB v. Mutual Pharmaceutical Co.*, 384 F.3d 1333, 1336 (Fed. Cir. 2004).

The words of a claim "are generally given their ordinary and customary meaning." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005), *cert. denied*, 546 U.S. 1170 (2006) (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). Ordinary and customary meaning is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention[.]" *Id.* at 1313. "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314. When the ordinary and customary meaning of a term is not readily apparent, "the court looks to 'those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean.'" *Id.* (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111,

1116 (Fed. Cir. 2004)). Those sources include the words of the claims themselves, the patent specification, the prosecution history, and extrinsic evidence. *Id.*

"The claims, of course, do not stand alone. Rather, they are part of 'a fully integrated written instrument,' consisting principally of a specification that concludes with the claims. For that reason, claims 'must be read in view of the specification, of which they are a part.'" *Phillips*, 415 F.3d at 1315 (quoting *Markman*, 52 F.3d at 979). Section 112 of the Patent Act, 35 U.S.C. § 112, states that the specification:

> shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

35 U.S.C. § 112. "The specification is always highly relevant to the claim construction analysis. Usually it is dispositive; it is the single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at 1315. "The specification 'acts as a dictionary when it expressly defines terms used in the claims or when it defines terms by implication.'" *Id.* at 1321 (quoting *Vitronics*, 90 F.3d at 1582).

In addition to the specification, the court should also consider the prosecution history, if it is in evidence, in determining the meaning of disputed claim terms. *Phillips*, 415 F.3d at 1317. The prosecution history is part of the intrinsic record and consists of a complete record of all proceedings before the Patent and Trademark Office ("PTO"), including the prior art cited during the examination of the patent, and any express representations made by the applicant regarding the scope of the claims. *Vitronics,* 90 F.3d at 1582. "[B]ecause the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Phillips*, 415 F.3d at 1317. Nonetheless, "the prosecution history can often inform the

meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Id.* (citing *Vitronics*, 90 F.3d at 1582-83).

"Although [the Federal Circuit has] emphasized the importance of intrinsic evidence in claim construction, [it has] also authorized district courts to rely on extrinsic evidence, which 'consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises.'" *Id.* (quoting *Markman,* 52 F.3d at 980). The Federal Circuit has observed that dictionaries and treatises can be "useful in claim construction[,]" particularly technical dictionaries which may help the court "'to better understand the underlying technology' and the way in which one of skill in the art might use the claim terms." *Id.* at 1318 (quoting *Vitronics*, 90 F.3d at 1584 n.6). As stated by the Federal Circuit en banc in *Phillips*:

> Because dictionaries, and especially technical dictionaries, endeavor to collect the accepted meanings of terms used in various fields of science and technology, those resources have been properly recognized as among the many tools that can assist the court in determining the meaning of particular terminology to those of skill in the art of the invention.

*Id.* (citation omitted). Further,

> [E]xtrinsic evidence in the form of expert testimony can be useful to a court for a variety of purposes, such as to provide background on the technology at issue, to explain how an invention works, to ensure that the court's understanding of the technical aspects of the patent is consistent with that of a person of skill in the art, or to establish that a particular term in the patent or the prior art has a particular meaning in the pertinent field.

*Id.* Conclusory, unsupported assertions by experts as to the definition of a claim term, however, are not useful to a court. *Id.* "Similarly, a court should discount any expert testimony 'that is clearly at odds with the claim construction mandated by the claims themselves, the written description, and

the prosecution history, in other words, with the written record of the patent.'" *Id.* (quoting *Key Pharms. v. Hercon Labs. Corp.,* 161 F.3d 709, 716 (Fed. Cir. 1998)).

"[W]hile extrinsic evidence can shed useful light on the relevant art, . . . it is less significant than the intrinsic record in determining the legally operative meaning of claim language." *Id.* at 1317 (internal citations and quotations omitted). "[U]ndue reliance on extrinsic evidence poses the risk that it will be used to change the meaning of claims in derogation of the indisputable public records consisting of the claims, the specification and the prosecution history, thereby undermining the public notice function of patents." *Id.* at 1319 (citation and internal quotations omitted).

## III. The Magistrate Judge's Reports and Recommendations

In his First Report, the magistrate judge summarized patent '878 as teaching:

> a method for validating electronic commerce transactions utilizing a unique transaction identifier (sometimes referred to as the "UTID") associated with a specific transaction between a purchaser of goods or services and a merchant. With the UTID the transaction administrator confirms the identity of the purchaser and notifies the merchant that the transaction may be completed.

First Report at 1. Although the parties stipulated to the construction of numerous claim terms, they joined issue as to the proper construction of other claim terms. The magistrate judge recommended that the court should construe those terms and phrases which appear in the patent, and to which the parties have stipulated as to the meanings, in accordance with the parties' Joint Claim Construction Statement filed on August 6, 2003, at Part 3. Of the agreed upon terms, the magistrate judge set forth two key terms essential to understanding the '878 patent, namely "recipient" and "transaction administrator." As the magistrate judge noted, the parties agreed that "recipient" should be defined as: "The party which receives the transaction from the originator," and "transaction administrator" or "TA" should be defined as "an entity which authenticates entities and validates the content of the transaction by the originator." *Id.* at 4. The parties disagreed as to the claim construction of

numerous claim terms as they appear throughout the '878 patent. As to these disputed claim terms, the magistrate judge recommended that the court apply the following claim construction:

- "originator"

  "A party who originates the transaction for exchanging information documents or for initiating payment via an electronic check or a payment transaction for goods and services from a recipient"(*Id.* at 3-4, 11)

- "unique transaction identifier" or "UTID"

  "information which specifically identifies an individual transaction initiated by an originator" (*Id.* at 5, 12)

  Note - the magistrate judge defines "unique" as "that which is peculiar to or which only related to a single transaction" (*Id.* at 5)

- "electronic commerce" or "electronic commerce transaction"[5]

  "a sequence of one or more related electronic transmissions that facilitate the purchase of and payment for goods and services between an originator and a recipient"(*Id.* at 4, 11)

- "validating," "verifying," and the "variations thereof"as they appear in the patent in the context of the verification process

  "the process used for comparing the UTID generated by an originator and the amount of the transaction to confirm the identity of the originator and the transaction related thereto" (*Id.* at 6, 12)

- "validation status" as it appears in claim 1, step 4

  "That step in the process of authenticating an electronic commerce transaction in which the originator confirms to the transaction administrator the validity of the transaction based on the UTID" (*Id.* at 6)

---

[5]The magistrate judge rejected the parties' suggestions that the terms "electronic commerce" and "electronic commerce transaction" should have separate definitions, finding that "they should be construed applying a single definition[.]" First Report at 4.

The magistrate judge further recommended that the court apply the following findings and construction of terms with respect to the independent claims set out in the '878 patent:

- Independent Claim 1 – "notifying"

  "Giving notice to" (*Id.* at 7, 12)

- Independent Claim 11 – "translation"

  a. "The court should find that the use of the term 'translation' as it appears in this claim renders the said claim indefinite and therefore invalid as a matter of law pursuant to 35 U.S.C. § 112 ¶ 2." (*Id.*)

  b. "The court should find that the term 'requesting' as it appears in steps two and three of this claim is ambiguous and indefinite in failing to identify or specify which party to the electronic commerce transaction is required to initiate the request, rendering this claim invalid pursuant to 35 U.S.C. § 112 ¶ 2." (*Id.*)

  c. "In the alternative, if the court does not find claim 11 invalid on the basis of indefiniteness, . . . the phrase 'if the unique transaction identifier, the originator identifier and translation data are validated by both the originator and the transaction administrator' should be construed to require that both the originator and the transaction administrator validate the unique transaction identifier, the originator identifier and the <u>translation</u> data." (*Id.* at 13) (Original emphasis)

- Independent Claim 15 – "verifying if the originator generated the payment transaction"

  "The originator must determine that the originator generated the payment transaction by comparing (a) the unique transaction identifier that has been returned to the originator with (b) a particular transaction with a record of unique transaction identifiers maintained by the originator." (*Id.*)

- Independent Claim 50 - "associating a UTID with the electronic transaction"

  "the party originating the transaction connecting or linking up the unique transaction identifier created by the originating party to the transaction" (*Id.*)

The magistrate judge also recommended that the terms "to" and "from" "should be given their generally understood and customary meanings." *Id.* at 6. As to the remaining terms and phrases which appear in the '878 patent, the magistrate judge similarly recommended that the court apply definitions "consistent with their customary and generally understood meanings." *Id.* at 13-14.

While the First Report and the parties' objections were pending, the court granted the parties leave to file supplemental briefing following the Federal Circuit's en banc decision in *Phillips*, *supra*. After hearing argument of counsel and reviewing the supplemental briefing and case law, on January 19, 2006, the magistrate judge filed his Second Report, affirming the claim construction in the First Report, stating that he did "not find any reason to change any portion of [his First Report], in light of the Federal Circuit's decision in *Phillips*[.]" Second Report at 3.

## IV. Objections

### A. Visa's Objections

Visa has filed objections to the magistrate judge's recommended construction of "unique transaction identifier," "verifying if the originator generated the payment transaction" in claim 15, and "verifying," "validating" and "validation status." Def. Obj. to First Report. Visa also objects to the magistrate judge's recommendation that the related terms "to," "from" and "through" not be construed. *Id.* at 10. Visa objects to the magistrate judge's construction of the term "payment transaction." Visa further objects to certain statements in the First Report "related to apparent errors and terms for which constructions are not recommended." *Id.* at 11. Under this heading, Visa objects to: the use of the word "transmission data" on page four of the First Report as a typographical error, when the magistrate judge intended to refer to "transaction data"; the magistrate judge's statement in footnote 4 on page 14 of the First Report referring to "additional terms and

phrases to which Defendant has not objected," since "there are no unopposed Plaintiff constructions"; the magistrate judge's rejection of Visa's contention that the phrase "said request" appearing in the first step of claim 15 ("said request including at least an originator identifier") renders the claim ambiguous and indefinite, and therefore invalid under 35 U.S.C. § 112; and the magistrate judge's recommendation that the court reject Visa's contention that certain claims (namely 3, 15, 16, 18, 20, 25, 27, and 30) are invalid as indefinite under 35 U.S.C. § 112. *See id.* at 11-14.

Visa's objections to the Second Report incorporate by reference the totality of its previous submissions on claim construction issues, and are essentially the same as its objections to the First Report. *See* Def. Obj. to Second Report at 3 ("[T]he present submission further sharpens and elaborates on those same objections in light of the Phillips decision and the Magistrate Judge's application of that decision in his Second Report.").

### B. Plaintiffs' Objections

Plaintiffs, like Visa, object to the magistrate judge's construction of "validating," "verifying," and "variations thereof." Pl. Obj. to First Report at 9-13. Plaintiffs also object to the magistrate judge's definition of "verifying if the originator generated the payment transaction" from claim 15. *Id.* at 13-15. Finally, Plaintiffs object to the magistrate judge's proposed definition of "associating a UTID with the electronic transaction" from claim 50. *Id.* at 15-16. Plaintiffs' objections to the Second Report incorporate by reference the briefs, responses and replies previously filed regarding claim construction, and are essentially the same as their objections to the First Report.

## V.    Analysis

VIMachine filed the patent application on August 20, 1997.  On November 14, 1997, during the prosecution of the patent, VIMachine filed the "Petition to Make Special," requesting accelerated examination of the patent application.  *See* Def. App. to Reply to Pl. Obj to First Report at Ex. 1 ("Def. Reply App.") (the "Petition Statement").  The United States Patent and Trademark Office issued the '878 patent on May 11, 1999.

Essentially, the '878 patent and its file history describe a method for securely processing online commercial business transactions electronically.  The '878 patent discloses a system involving an "originator (a consumer or purchaser), a "recipient" (a merchant or store owner), and a "transaction administrator" (a system administrator such as a credit card association).  In the Petition Statement, VIMachine limited the claims of the invention in order to distinguish them over prior art and give the public notice as to how the claims should be construed.  Specifically, in the Petition, VIMachine explained the scope of the claims in order to distinguish twelve prior art references.  First, VIMachine stated: "Applicants believe that all claims are directed to a single invention."  Def. Reply App. at 5.  After describing the twelve prior art patents, VIMachine distinguished its invention as follows:

> The pending claims of the present application clearly define over the references cited herein.  None of the references, whether considered alone or whether considered in any reasonable combination thereof, disclose, teach, suggest, or render obvious a method for providing a validated electronic commerce transaction wherein a unique transaction identifier is generated by an originator and ultimately, the electronic commerce transaction and its associated identifier are returned to the originator to provide for validation of the electronic commerce transaction prior to completion of the transaction.  Neither is there disclosed a process for returning the identifier to the originator by a transaction authority validating the identity of the originator and determining where to return the electronic transaction and identifier based on the validation.

*Id.* at 10-11.

With this brief summary of the invention and the prosecution history in mind, the court now addresses the magistrate judge's recommended claim construction in light of the parties' objections. Rather than considering each parties' objection *ad seriatim*, the court will consider each claim term construed by the magistrate judge and the parties' objections, if any, to that particular recommended claim construction.

### A.    *"originator"*

Rejecting the parties' proposed definitions of "originator," the magistrate judge recommended that "originator" be construed as: "A party who originates the transaction for exchanging information documents or for initiating payment via an electronic check or a payment transaction for goods and services from a recipient." First Report at 3, 11. No objections have been filed with respect to the magistrate judge's proposed construction. After careful review of the magistrate judge's findings and conclusions, record, legal briefing, and applicable law, the court determines that the magistrate judge's proposed construction of "originator" in patent '878 is **correct**, and it is hereby **accepted** as the court's construction of "originator."

### B.    *"recipient"*

The magistrate judge recommended that "recipient" be construed as: "The party which receives the transaction from the originator." First Report at 4. No objections have been filed with respect to the magistrate judge's proposed construction. After careful review of the magistrate judge's findings and conclusions, record, legal briefing, and applicable law, the court determines that the magistrate judge's proposed construction of "recipient" in patent '878 is **correct**, and it is hereby **accepted** as the court's construction of "recipient."

C.       **"*transaction administrator*" or "*TA*"**

The magistrate judge recommended that "transaction administrator" or "TA" be construed as "an entity which authenticates entities and validates the content of the transaction by the originator." First Report at 4. No objections have been filed with respect to the magistrate judge's proposed construction. After careful review of the magistrate judge's findings and conclusions, record, legal briefing, and applicable law, the court determines that the magistrate judge's proposed construction of "transaction administrator" or "TA" in patent '878 is **correct**, and it is hereby **accepted** as the court's construction of "transaction administrator" or "TA."

D.       **"*unique transaction identifier*" or "*UTID*"**

The magistrate judge, noting that the "'878 patent does not identify any specific elements which must be embodied in the UTID," recommended that "unique transaction identifier" or "UTID" be construed as "information which specifically identifies an individual transaction initiated by an originator." First Report at 5, 12. He also defined "unique" as "that which is peculiar to or which only relates to a single transaction." *Id.* at 5.[6]

**1.       Visa's Objections to Magistrate Judge's Recommended Construction of UTID**

Visa has filed objections to the magistrate judge's proposed definition of "unique transaction identifier" or "UTID." Visa contends that the term "information," as used by the magistrate judge in his recommended claim construction, does not fully capture the characteristics of an "identifier," as used in the '878 patent, and risks allowing the jury to confuse the UTID with the information that

_____

[6]In reaching his proposed construction of "UTID," the magistrate judge rejected the parties' proposed constructions of the term. Plaintiffs asked the magistrate judge to construe "unique transaction identifier" or "UTID" as "information that, at any given time and a particular step of the transaction, allows a party to positively identify the transaction." Visa urged the magistrate judge to construe "unique transaction identifier" or "UTID" "as a data string that is generated by the originator of the transaction and is not repeated within the originator, recipient and transaction administrator systems (i.e. unique) and that is specifically constructed, designated and used for the purpose of establishing both the identity and the validity of a particular transaction."

makes up the transaction itself. Def. Obj. to Second Report at 5. Visa contends that both the '878 claims and the specification indicate that the UTID must be a data string, which is distinct from the transaction information itself. *Id.* at 6. Visa urges the court to construe "unique transaction identifier" or "UTID" as: "a data string peculiar to or which only relates to a single transaction initiated by an originator, and which specifically identifies the transaction." Def. Obj. to First Report at 2. Alternatively, if the court disagrees with the term "data string," Visa asks the court to insert "symbol," "code," "label," or "text string" in place of the word "information" in the magistrate judge's recommended definition. *Id.* at 4. Visa also states that these definitions can be combined to read "a symbol, code or label, which also communicates the nature and function of the UTID described in the specification and prosecution history." *Id.*

Visa also asks the court to incorporate the magistrate judge's definition of "unique," namely, "peculiar or which only relates to a single transaction," into the definition of "unique transaction identifier." Def. Obj. to Second Report at 10. According to Visa, "[t]his modification will ensure [that] the Magistrate Judge's intended meaning is clearly captured in the construction and [will] limit the potential for misinterpretation in subsequent proceedings." Def. Obj. to First Report at 3.

To support its proposed construction that the UTID is a "data string" distinct from the transaction information itself, Visa points to both the intrinsic and extrinsic evidence. Visa references independent claim 27 and dependent claim 28 which specifically describe the "UTID" as a number, and use the word "number" interchangeably with "identifier." Def. Obj. to Second Report at 6-7 (quoting claims 27, 28). "[C]laims 27 and 28 describe sending the 'unique transaction identifier' to the transaction administrator and then subsequently forwarding that same 'unique transaction number' to the originator, where it is compared with other 'unique transaction identifiers.'" *Id.* at 7. Visa also explains that independent claim 31 and dependent claim 32 use the

word "number" synonymously with "identifier." Visa provides the court with excerpts from both

claims:

Claim 31 (excerpt):

> generating in response to the second e-mail message a third e-mail message from the transaction administrator to the originator requesting validation of the unique transaction identifier, *the third e-mail message including the unique transaction identifier*;
> comparing the *unique transaction number from the third e-mail message* to the other unique transaction numbers generated by the originator to determine if the originator generated the transaction order; and
> completing the transaction based upon the results of the comparison.

Claim 32 (excerpt):

> The method of claim 31 wherein the step of completing further comprises the steps of: notifying the transaction administrator if the originator generated the *unique transaction number* based on the results of the comparison[.]

*Id.* at 20 (quoting claims 31 and 32) (Visa's emphasis). Based on this evidence, Visa contends the

court should construe the UTID as a number. Visa also emphasizes Plaintiffs' admission that in

claims 27, 28, 31 and 32, the UTID must be a number. *Id.* at 7 (citing Pl. Reply to Def. Obj at 3

n.2). Visa contends that "[u]nder applicable law as explained in *Phillips* and elsewhere, if the

'unique transaction identifier' means a number in some claims, then it must also mean a 'number'

in all other claims." *Id.* (citing *Dayco Prod., Inc. v. Total Containment, Inc.*, 329 F.3d 1358, 1371

(Fed. Cir. 2003) ("If a claim term appears in more than one claim it should be construed the same

in each.")). Finally, Visa contends that the specification expressly distinguishes the UTID from

the transaction information, explaining that the UTID is created, processed and transmitted *in

addition to* the transaction data. *Id.* at 8. (Visa's emphasis). Visa provides the following examples

from the specification:

> The electronic transaction includes details of the transaction such as descriptions of the item(s) that the client desires to purchase, credit card or check payment information, information on other types of

payment by means of which the item(s) will be purchased, *and a unique transaction identifier* that has been generated by the originator and is uniquely associated with the particular purchase transaction.

'878 patent, col. 3 lines 12-19 (emphasis added).

The originator 50 validates the transaction by comparing at step 95 the UTID with a list 100 generated by the processor 70 of the originator listing the UTID associated with each transaction generated by the originator and notifying the transaction administrator 60 of the results. The list 100 also includes the details of the transaction (amount; parties, etc.) associated with the UTID which must also be validated by the originator 50.

'878 patent, col. 5 lines 14-21; *see also* '878 patent, col. 5 lines 65-67 ("Along with the confirmation request, the merchant 55 transmits the UTID, credit card number and data concerning the purchase order to the CA 60."); col 7 lines 3-5 ("The CA 60 then sends the credit transaction information along with an associated UTID or a rejection of authorization back to client 50 at step 210."); col. 10 lines 64-67 ("Included within the e-mail message . . . are the unique transaction identifier [and] purchase order data such as item, amount and delivery address[.]"). Visa also refers the court to Figure 4 of the '878 patent, which separately identifies the UTID, "transaction content," and "relevant information." *See* Ex. A to App. A to Def. Obj. to Second Report. Additionally, in the Petition to Make Special, VIMachine stated that: "a unique transaction identifier is generated by an originator, and ultimately, the electronic commerce transaction and its associated identifier are returned to the originator to provide for validation." Based on the totality of the above-referenced intrinsic evidence, along with numerous other similar references to the UTID as something separate and apart from the details of the transaction, Visa summarizes its argument as follows: "If the UTID *could be* the transaction information itself, there would be no need to describe it as something that is included *in addition to* the details of the transaction." Def. Obj. to Second Report at 8 (original emphasis).

In addition to the intrinsic evidence, Visa supports its proposed construction of "UTID" with various technical dictionaries. Visa cites a computer dictionary which defines "identifier" as "[g]enerally, any text string used as a label, such as the name of a procedure or a variable in a program, or the name attached to a hard drive or floppy drive. Compare descriptor." *Id.* at 9 (citing Computer Dictionary, Microsoft Press, 1991); *see also id.* (citing Modern Dictionary of Electronics, R. Graf, 6th ed. 1984) (identifier is "1. A symbol the purpose of which is to identify, indicate, or name a body of data. 2. a mnemonic code used to identify or name an item of data or data format in a computer."). Visa has also provided the court with the testimony of its expert, Dr. Michael I. Shamos, whose testimony at the claim construction hearing regarding how "unique transaction identifier" would be understood by one of skill in the art, was in keeping with the technical dictionary definitions. *See* App. A to Def. Obj. to First Report at 10-16.

### 2. Plaintiffs' Response to Visa's Objections

Plaintiffs oppose Visa's proposed modifications to the magistrate judge's recommended construction of the term "unique transaction identifier" or "UTID." Plaintiffs contend that the "UTID [is] simply information that enable[s] a customer to identify a transaction as uniquely his." *See* Pl. Reply to Def. Obj. to Second Report at 3. "There is no requirement in the specification or claims that the UTID be a contiguous alphanumeric string; rather the specification and claims teach that the UTID can include transaction content, such as the purchase price." *Id.* Plaintiffs argue further that UTID is never referred to as a "number' in the specification, nor is the word "string" used in the specification or claims.

### 3. Discussion

Given this intrinsic evidence of record, and the teachings of *Phillips*, *supra*, the court determines that the magistrate judge's recommended construction of "unique transaction identifier"

or "UTID," insofar as it includes the term "information," is too broad and potentially confusing to the jury. "[I]nformation which specifically identifies an individual transaction initiated by an originator" (*see* First Report at 5) as the definition of "UTID" could well lead a jury to confuse the "UTID" with the information that makes up the transaction itself. Such a definition would be inconsistent with the intrinsic evidence. The intrinsic record referenced above (including the specification, claims and prosecution history) amply illustrates that the UTID is not merely the transaction information itself, though transaction data can be included in the UTID. The '878 specification clearly distinguishes the UTID from: the "information" that constitutes the transaction ('878 patent, col. 3 lines 12-19); the "details of the transaction" ('878 patent, col. 5 lines 14-21); the "data concerning the purchase order" ('878 patent, col. 5 lines 65-67); the "purchase order data" ('878 patent, col. 6 lines 5-9); the "credit transaction information" ('878 patent, col. 6 lines 5-9); the "relevant transaction data" transmitted by the originator ('878 patent, col. 10 lines 58-60); and "item, amount and delivery address" ('878 patent, col. 10 lines 64-67). Figure 4 of patent '878 shows the UTID as different from the "relevant information" or "content" of the transaction itself. As stated by the Federal Circuit in *Phillips*, "The specification is always highly relevant to the claim construction analysis. Usually it is dispositive; it is the single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at 1315. In the Petition Statement, Plaintiffs similarly separated the "electronic commerce transaction" from its "associated identifier."

Although the court agrees with Visa that the recommended term "information" is too broad and risks confusing the jury, the court rejects Visa's argument that the UTID must always be a number. As Plaintiffs correctly argue, that the UTID is a number in certain claims (27, 28, 32, 32) does not make it a number in all claims. *See* Pl. Reply to Def. Obj. to Second Report at 3 n.3 ("[W]hile it appears that the UTID in [claims 27, 28, 31 and 32] must be a 'number,' there is no

reason to import that limitation to any of the other claims.  If the drafter had meant to write claims that required a unique transaction 'number,' he would have used that formulation since he obviously knew how to do so.").[7]

In sum, for the reasons stated directly above, the court **sustains** that portion of Visa's objections relating to the magistrate judge's choice of the word "information" as part of his recommended construction of the claim term "unique transaction identifier" or "UTID."  Visa proposes that the court replace the word "information" with "data string," or, alternatively, "code," "symbol," "label," or "text string."  Having considered these terms, and the ultimate purpose of the construction, which is to inform the jury of the meaning of claim terms, the court determines that the terms "code or label" best capture the meaning of "identifier," when viewed in light of the intrinsic and extrinsic evidence.[8]  Merriam-Webster's Collegiate Dictionary defines "code" as "a

---

[7]Defendants cite to *Phillips* to support their argument that because the UTID is a number in certain claims it must be a number in all claims.  *See Phillips*, 415 F.3d at 1314 ("Because claim terms are normally used consistently throughout the patent, the usage of a term in one claim can often illuminate the meaning of the same term in other claim.").  The court agrees with Plaintiffs that Visa's invocation of this principle from *Phillips* is misleading.  As stated by Plaintiffs: "There are two different claim terms at play here.  In claim 27, for example, there is claimed a 'unique transaction number.'  The fact that, in that claim, the UTID is a 'number' does not mean that it has to be a number in all other claims.  Two different phrases are at play[,] not a single phrase – the second being more restrictive in claiming a 'number.'"  Pl. Reply to Def. Obj. to Second Report at 5 n.6.

[8]Extrinsic evidence in the form of definitions of the word "identifier" from technical dictionaries supports the court's decision to sustain Visa's objection to the magistrate judge's use of the word "information" in his construction of the claim term "unique transaction identifier" or "UTID."  *See* Def. Obj. to Second Report at 9 (citing Computer Dictionary, Microsoft Press, 1991); *see also id.* (citing Modern Dictionary of Electronics, R. Graf, 6th ed. 1984) (identifier is "1. A symbol the purpose of which is to identify, indicate, or name a body of data. 2. A mnemonic code used to identify or name an item of data or data format in a computer.").  *See generally Phillips*, 415 F.3d at 1318 ("Because dictionaries, and especially technical dictionaries, endeavor to collect the accepted meanings of terms used in various fields of science and technology, those resources have been properly recognized as among the many tools that can assist the court in determining the meaning of particular terminology  to those of skill in the art of the invention.").  Similarly, testimony of Visa's expert regarding the meaning of "unique transaction identifier" to one skilled in the art also supports the court's decision. *See* App. A to Def. Obj. to First Report at 10-16; *see generally  Phillips*, 415 F.3d at 1318 ("[E]xtrinsic evidence in the form of expert testimony can be useful to a court for a variety of purposes, such as to provide background on the technology at issue, to explain how an invention works, to ensure that the court's understanding of the technical aspects of the patent is consistent with that of a person of skill in the art, or to establish that a particular term in the patent or the prior art has a particular meaning in the pertinent field.").  The court is mindful, however, that "while extrinsic evidence can shed useful light on the relevant art, . . . it is less significant than the intrinsic record in determining the legally operative meaning of claim language." *Id.* at 1317 (internal citations and quotations omitted).  Further, "undue reliance on extrinsic evidence poses the risk that it will be used to change the meaning of claims in derogation of the indisputable public records consisting of the claims, the specification and the

system of signals or symbols for communication" or "a system of symbols (as letters or numbers) used to represent assigned and often secret meanings." *See* Merriam-Webster's Collegiate Dictionary 239 (11th ed. 2004); *see also* The New Oxford American Dictionary 330 (2001) (code is "a system of words, letters, figures, or other symbols used to represent others"). Merriam-Webster's Collegiate Dictionary defines "label" as "a descriptive or identifying word or phrase[.]" *See* Merriam-Webster's Collegiate Dictionary at 239.

The court, however, **overrules** Visa's request that the court insert the magistrate judge's definition of "unique," namely, "peculiar to or which relates to a single transaction," into the definition of "UTID" in place of "which specifically identifies an individual transaction." The court agrees with Plaintiffs that it is "difficult to see what the difference is or why it is material." *See* Pl. Feb 27, 2006 Reply to Def. Obj. at 6. The magistrate judge's recommended definition of "unique transaction identifier" or "UTID" more than sufficiently conveys a sense of uniqueness that a jury will understand. Absent a clear need to change the magistrate judge's proposed construction, the court will not substitute an equivalent phrase in its stead.

In sum, after careful review of the magistrate judge's findings and conclusions, Visa's objections, record, legal briefing, and applicable law, the court determines that the magistrate judge's proposed construction of "unique transaction identifier" or "UTID" in patent '878 is **correct in part**. Specifically, the court **rejects** that portion of the magistrate judge's recommended definition that uses the word "information," and replaces that term with "code or label." The court **accepts** the remainder of the magistrate judge's proposed definition. Accordingly, the court

---

prosecution history, thereby undermining the public notice function of patents." *Id.* at 1319 (citation and internal quotations omitted). Here, the court has carefully examined the intrinsic record, as instructed in *Phillips*, which is the court's primary source for claim construction. Unlike the court in *Texas Digital*, which adopted the dictionary definition divorced from the intrinsic record, this court has only secondarily consulted the extrinsic evidence, recognizing it is entitled to far less weight. *See generally id.* at 1319.

construes "unique transaction identifier" or "UTID" in patent '878 to mean: "a code or label which specifically identifies an individual transaction initiated by an originator."

**E.    "*electronic commerce*" or "*electronic commerce transaction*"**

The magistrate judge rejected the parties' suggestions that the terms "electronic commerce" and "electronic commerce transaction" should have separate definitions, finding that "they should be construed applying a single definition[.]" First Report at 4.   The magistrate judge recommended that  "electronic commerce" and "electronic commerce transaction" should be construed as "a sequence of one or more related electronic transmissions that facilitate the purchase of and payment for goods and services between an originator and a recipient." *Id.* at 4, 11.  No objections have been filed with respect to the magistrate judge's proposed construction.   After careful review of the magistrate judge's findings and conclusions, record, legal briefing, and applicable law, the court determines that the magistrate judge's proposed construction of "electronic commerce" and "electronic commerce transaction" in patent '878 is **correct**, and it is hereby **accepted** as the court's construction of  "electronic commerce" and "electronic commerce transaction."

**F.    "*validating*," "*verifying*," and the "*variations thereof*" as they appear in the patent in the context of the verification process**

The magistrate judge recommended that the terms "validating," "verifying," and the "variations thereof" in the context of the verification process be construed as "the process used for comparing the UTID generated by an originator and the amount of the transaction to confirm the identity of the originator and the transaction related thereto."   First Report at 6, 12.  The magistrate judge reasoned that the UTID must be generated by an "originator" based on arguments made by VIMachine to distinguish prior art during prosecution.  *See id.* at 5-6.  The magistrate judge quoted extensively from the Petition Statement to support his proposed claim construction:

> [None of the prior art patents] provid[ed] a validated electronic commerce transaction *wherein a [UTID] is generated by an originator* and ultimately, the electronic commerce transaction and its associated identifier are returned to the originator to provide for validation of the electronic commerce transaction prior to completion of the transaction. Neither [do prior patents disclose] a process for returning the identifier to the originator by a [TA] validating the identity of the originator and determining where to return the electronic transaction and identifier based on the validation.

First Report at 5 (emphasis added). Both parties have filed objections to the magistrate judge's proposed claim construction of "validating," "verifying," and the "variations thereof" in the context of the verification process. As the parties' objections at times overlap, the court will consider the objections in tandem.

Plaintiffs object that the magistrate judge's proposed definition of "verifying," "validating" and "variations thereof" is "unduly restrictive" in that it: (1) "requires generation of the UTID by the originator rather than allowing for the UTID to be optionally generated by the TA, as specifically taught by the specification," and (2) "specifically requires the 'amount of the transaction' rather than a more generic reference to 'transaction content.'" Pl. Obj. to First Report at 9. In light of these objections, Plaintiffs propose two changes to the magistrate judge's proposed definition: (1) the deletion of the requirement that the UTID be "generated by an originator" and (2) the addition of "/or" between the UTID and transaction data followed by replacing "amount of the transaction" with "transaction content." *Id.* at 9-13. Plaintiffs' proposed definition of "verifying," "validating" and "variations thereof" in the context of the verification process is: "The process used for comparing the UTID and/or the transaction content to confirm the identity of the originator and the transaction related thereto." *Id.* at 9.

Visa similarly objects to the magistrate judge's inclusion of the term "amount of the transaction" in his recommended construction of the terms "validating," "verifying," and "variations

thereof." Visa asks the court to define the terms "validating" and "verifying" in keeping with the specification and file history as: "The process used for comparing (a) the UTID that is generated by an originator and associated with a transaction with (b) the record of UTIDs for transactions generated by the originator, to confirm the identity of the originator and the transaction related thereto." Def. Obj. to First Report at 8.

### 1. "generated by an originator"

#### a. Plaintiffs' Objections

In support of their contention that "generated by the originator" should be deleted from the magistrate judge's proposed claim construction of "validating," "verifying," and "variations thereof," Plaintiffs make several arguments. First, Plaintiffs point to the alternative embodiment in the specification in which the UTID is generated by the transaction administrator. *Id.* at 10 (citing '878 patent, col. 6 lines 61-62) ("In the alternative embodiment parties other than the originator may create the UTID, for example the TA[.]"); *id.* (citing '878 patent, col. 7 lines 15-16) (noting that the UTIDs in the system shown and described in Figures 7 and 8 are "created by the processor" which is part of the TA's computer system). Plaintiffs further contend that the magistrate judge erred in relying on the prosecution history because the examiner did not similarly read the specification to require that the UTID be generated by the originator in claim 50. Instead, Plaintiffs argue, the examiner failed to specify how the UTID was generated in connection with claim 50, and thus the examiner intended that claim 50 encompass the alternative embodiments from the specification where someone other than the originator generates the UTID. *Id.* at 11 ("If the Court adopts the Recommendations' requirement that the originator must always generate the UTID, the embodiment described in the specification and set forth in claim 50 will be erased."). Additionally, Plaintiffs argue that the Petition Statement relied upon by the magistrate judge does not declare "that **only** the

originator can generate the UTID or that generation by the originator is **necessary** to distinguish the invention over the prior art." Pl. Obj. to Second Report at 12 (original emphasis). Therefore, Plaintiffs argue, the Petition Statement "does not amount to 'words or expressions of a manifest exclusion or restriction.'" *Id.* at 12. Finally, Plaintiffs argue that the magistrate judge erroneously "read into the claims a limitation that is simply not there." *Id.* at 10-11.

### b. Visa's Response to Plaintiffs' Objections

In response to Plaintiffs' objections, Visa contends that the magistrate judge properly concluded that the UTID must be generated by an originator based on the applicants' own Petition Statement, wherein VIMachine described various prior art references and explained why their invention was allowable over those references. *See* Def. Resp. to Pl. Obj. to Second Report at 11. According to Visa, "[b]y identifying a UTID 'generated by an originator' as one of the features that distinguished their invention over the prior art, the applicants gave up other embodiments in which the UTID was generated by an entity other than the originator." *Id.*[9] Visa also points to the "Summary of Invention" which described the electronic transaction as including "a unique transaction identifier that has been generated by the originator[.]" *Id.* at 6.

As to Plaintiffs' argument that an alternative embodiment in the specification allows for the TA to generate the UTID, Visa argues that an alternative "embodiment described in the specification can be disclaimed during prosecution." *Id.* at 12 (citing *Springs Window Fashions LP v. Novo Industries LP*, 323 F.3d 989, 996 (Fed. Cir. 2003) ("[W]e have adopted claim constructions excluding an embodiment when the prosecution history requires the claim construction because of

---

[9]In further support of the magistrate judge's proposed claim construction requiring that the UTID be generated by an originator, Visa contends that "[t]he disclaimer is even more apparent when one looks at the prior art the applicants were distinguishing. Two prior art patents discussed by the applicants in the Petition – Brachtl and Tamada – disclosed other methods of generating the UTID . . . By arguing that the UTID, in the context of the '878 patent, is generated by an originator, the Petition Statement expressly distinguished the UTID from the 'first authentication code' in Brachtl and the 'confirmation data' of Tamada." *Id.* at 11-12 n.5.

disclaimer.")).  With regard to Plaintiffs' contention that the Petition Statement "does not amount to 'words or expressions of a manifest exclusion or restriction'" (*see* Pl. Obj. to Second Report at 12), Visa argues that the doctrine of prosecution disclaimer does not require an express statement that a particular embodiment is the "only" or "necessary" embodiment.  "Rather, the prosecution statement need only be 'clear and unmistakable' in stating the point of distinction between the claimed invention and the prior art."  Def. Resp. to Pl. Obj. to Second Report at 13 (citing *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1325-26 (Fed. Cir. 2003)).  Visa also asks the court to reject Plaintiffs' argument that the magistrate judge erroneously "read into the claims a limitation that is simply not there."  *See* Pl. Obj. to First Report at 10-11.  Visa states that the recommended constructions relate to the terms "verifying" and  "validating," which literally appear in relevant phrases of the claims.  These words appearing in the claims provide the "textual reference in the actual language of the claim with which to associate [the recommended] claim construction."  Def. Reply. to Pl. Obj. to First Report at 17 (quoting *Johnson Worldwide Assoc., Inc. v. Zebco Corp.*, 175 F.3d 985, 990 (Fed. Cir. 1999)).  According to Defendants, Plaintiffs "put the public on notice during prosecution that '[t]he pending claims' and 'claimed invention' recited 'a method for providing a validated electronic commerce transaction wherein a unique transaction identifier is generated by the originator.'" *Id.* (quoting Petition Statement).  Based on the doctrine of prosecution disclaimer, "when statements in the prosecution history require a particular construction of a claim term, the term must be construed to exclude the disclaimed subject matter, even when the specific words describing the exclusion do not appear in the claim language."  *Id.* at 17-18.

### c.  Discussion

Federal Circuit precedent establishes that when statements in the prosecution history require a particular construction of a claim term, the term must be construed to exclude the disclaimed

subject matter.  *See generally N. Am. Container v. Plastipak Packaging, Inc.*, 415 F.3d 1335, 1345 (Fed. Cir. 2005) (to overcome an obviousness rejection, applicant distinguished his invention based on prior art disclosing "slightly concave" inner walls; the "inescapable consequence of such an argument in that the scope of applicant's claims cannot cover inner walls that are "slightly concave"); *Seachange Int'l, Inc. v. C-Cor Inc.*, 413 F.3d 1361, 1373 (Fed. Cir. 2005) ("Where an applicant argues that a claim possesses a feature in order to overcome a prior art rejection, the argument may serve to narrow the scope of otherwise broad claim language."); *Innova/Pure Water*, 381 F.3d at 1117 ("Because the inquiry into the meaning of claim terms is an objective one, a patentee who notifies the public that claim terms are to be limited beyond their ordinary meaning to one of skill in the art will be bound by the notification, even where it may have been unintended."); *Omega Eng'g*, 334 F.3d at 1323-24 ("[W]here the patentee has unequivocally disavowed a certain meaning to obtain his patent, the doctrine of prosecution disclaimer attaches and narrows the ordinary meaning of the claim congruent with the scope of the surrender."); *Rheox, Inc. v. Entact, Inc.*, 276 F.3d 1319, 1325 (Fed. Cir. 2002) ("Explicit arguments made during prosecution to overcome prior art can lead to narrow claim interpretations because the public has a right to rely on such definitive statements made during prosecution.") (internal quotations and citation omitted).

 In *Phillips*, although recognizing that the prosecution history "often lacks the clarity of the specification and thus is less useful for claim construction purposes[,]" the court went on to state: "Nonetheless, the prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Id.* (citing *Vitronics*, 90 F.3d at 1582-83).

The magistrate judge, after considering the Petition Statement and the doctrine of prosecution disclaimer, as well as the specification, correctly determined that by identifying a UTID "generated by an originator" as one of the key features that distinguished their invention over prior art, Plaintiffs surrendered other embodiments in which the UTID was generated by another entity. The Petition Statement unequivocally states that "the pending claims" and "the claimed invention" are different from prior art because they use a UTID that is generated by an originator and returned to that originator for validation. Moreover, the doctrine of prosecution disclaimer does not require an express statement that a particular embodiment is the "only" or "necessary" embodiment. The prosecution statement need only be "clear and unmistakable" in stating the point of distinction between the claimed invention." *See Omega Eng'g*, 334 F.3d at 1325-26.

Further, the court rejects Plaintiffs' argument that the patent claims should be construed by reference to the patent examiner's statement and subjective intent. It is irrelevant for purposes of examining the prosecution history in this context that the examiner did not specify how the UTID was generated in connection with claim 50, and thus might have intended that claim 50 encompass the alternative embodiments from the specification where someone other than the originator generates the UTID. *See Innova/Pure Water*, 381 F.3d at 1124 ("It is well settled . . . that it is the applicant, not the examiner, who must give up or disclaim subject matter that would otherwise fall within the scope of the claims."); *Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340, 1350 (Fed. Cir. 2004) ("We have stated on numerous occasions that a patentee's statements during prosecution, whether relied on by the examiner or not, are relevant to claim interpretation."); *Laitram Corp. v. Morehouse Indus., Inc.*, 143 F.3d 1456, 1462 (Fed. Cir. 1998) ("The fact that an examiner placed no reliance on an applicant's statement distinguishing prior art does not mean that the statement is inconsequential for purposes of claim construction.").

The court also rejects Plaintiffs' argument that the magistrate judge erroneously "read into the claims a limitation that is simply not there." Pl. Obj. to First Report at 10-11. The Federal Circuit has "warned against importing limitations from the specification into the claims absent a clear disclaimer of claim scope." *Andersen*, 474 F.3d at 1373 (citation omitted); *see also Phillips*, 415 F.3d at 1323 ("[T]he distinction between using the specification to interpret the meaning of a claim and importing limitations from the specification into the claim can be a difficult one to apply in practice"). In this case, the court is faced with intrinsic evidence of limitation derived from both the specification and the prosecution history. In light of the Summary of Invention and the Abstract, the court is certain that requiring that the UTID be generated by the originator is using the specification to interpret the meaning of the claim terms, rather than importing limitations into the claims.[10] Even if this were a close call, the prosecution history described above "definitively resolves the question." *Andersen*, 474 F.3d at 1373 (rejecting patentee's claim that district court imported limitations from specification into the claims based on intrinsic evidence of restriction from specification and prosecutorial disclaimer evident from prosecution history). Based on the **foregoing** analysis of Plaintiffs' objections, the court **overrules** Plaintiffs' objection to the magistrate judge's recommendation that the UTID be "generated by the originator."[11]

---

[10]The "Summary of Invention" describes the invention as using a UTID that has been generated by the originator. The "Abstract" on the first page of the '878 patent also states that "verification" of a transaction occurs through use of a UTID generated by a purchaser (originator).

[11]Visa contends that Plaintiffs, for the first time at the November 5, 2005 claim construction hearing, argued that the magistrate judge's construction of "validating" and "verifying" must be in error because it was inconsistent with the use of the phrases "verifying the identifier for the originator" in claim 15 and "verify the originator identifier" in claim 27. *See* Def. Resp. to Pl. Obj. to Second Report at 16-17. As Visa correctly notes, the magistrate judge's recommended constructions of "validating" and "verifying" specifically concern "the process of verifying or validation a transaction," which is thereafter referred to as "the validating, verification process." *Id.* at 16 (quoting First Report at 5-6). The First Report did not construe "validating" and "verifying" as they appear in phrases that concern only verifying the originator identifier, that is, simply verifying that the account exists, without also verifying that the person trying to use the account is truly the account owner. *See id.* Thus, the court rejects any arguments made by Plaintiffs predicated on inconsistencies between the magistrate judge's recommended constructions of "validating" and "verifying"

**"the process used for comparing the UTID generated by an originator and the amount of the transaction to confirm the identity of the originator and the transaction related thereto."** (First Report at 6, 12)

### a. Parties' Objections

In its next objection to the magistrate judge's proposed construction of "validating," "verifying," and the "variations thereof," Plaintiffs propose the addition of "/or" between the UTID and transaction data and replacing "amount of the transaction" with "transaction content," resulting in "validating," "verifying," and the "variations thereof" being construed as: "The process used for comparing the UTID and/or the transaction content to confirm the identity of the originator and the transaction related thereto." Pl. Obj. to First Report at 9.

In support of the insertion of "/or" between the UTID and transaction content, Plaintiffs refer to certain instances in the '878 patent discussing validation or verification using the UTID "and/or" the "transaction content." Pl. Obj. to First Report at 12. Plaintiffs cite to the '878 patent at Figure 4, and note that in box 90 the "TA sends the electronic transaction with UTID and/or transaction content to Originator for validation." Plaintiffs also refer to the '878 patent, column 3 lines 4-6, which defines a "validated transaction" as one in which the "TA validates the entities, facilitates the transaction and/or validates the contents of the transaction by the originator." Based on these instances, Plaintiffs argue that "[b]y specifying only that the validation is of the UTID **'and'** the 'transaction amount,' the Recommendation contradicts the teaching of the specification." *Id.* (original emphasis). Plaintiffs further argue that the doctrine of claim differentiation supports their suggested changes:

_____

(which concerned verifying the transaction) the phrases "verifying the identifier for the originator" in claim 15 and "verify the originator identifier" in claim 27. Although the court agrees with Visa that Plaintiffs' arguments should be rejected, the court declines Visa's further request that it define all phrases containing "verify," "validate" and "variations thereof," in the context of the verification of transactions. *Id.* at 17. The magistrate judge's proposed construction of "verifying" and "validating" and "variants thereof" pertaining to the process of verifying or validating a transaction is clear as it stands. Adopting Visa's suggestion would only create redundancy.

> [C]laim 50 only references validation by reference to the UTID –
> there is no reference in claim 50 to the "amount of the transaction" or
> to "transaction content." Claim 52, which depends from 50, adds the
> limitation of also validating the "transaction data." If "validation"
> always includes use of the transaction amount as suggested by the
> Recommendation, there is no "claim differentiation" between claims
> 50 and 52. Therefore, the Court should add "/or" and change the
> "amount of the transaction" to the more generic phrase used in the
> specification, "transaction content." These two changes make the
> construction consistent with the specification and claims and ensure
> that there is differentiation among the asserted claims.

*Id.* at 12-13.

With regard to the term "amount of the transaction" used by the magistrate judge, Plaintiffs argue that the more generic phrase "transaction content" is appropriate, since the transaction amount is only a specific part of the information related to the internet transaction. "Transaction content" would "implicate not only 'transaction amount,' but also the date of the transaction, description of the goods and services, the merchant at which the order was placed, and the like." Pl. Reply to Def. Obj. to Second Report at 5.

Visa contends that the court should reject Plaintiffs' request to add "/or" and to replace "amount of transaction" with "transaction content" based on the prosecution history and the '878 patent specification. Visa argues that adopting Plaintiffs' requested changes "would have the effect of eliminating the requirement that the UTID be used in the validating/verifying process. Rather, under Plaintiffs' proposed revision, the claim could be satisfied by a process of comparing the 'transaction content,' without using the UTID at all." Def. Reply to Pl. Obj. to First Report at 18. Visa argues that "[t]his result would be contrary to the result required by the specification and by the doctrine of prosecution disclaimer[.]" *Id.* Visa also points to the specification which provides that "verifying" and "validating" a transaction requires the use of a UTID. The specification states that: [t]he identifier [UTID] is compared to a listing of generated transaction identifiers at the client

[originator]." '878 patent, col. 3 lines 36-39. Visa also contends that Plaintiffs' reference to the '878 patent at Figure 4, box 90 is misleading. Although the box representing claim 90 in Figure 4 does provide that the: "TA sends the electronic transaction with UTID and/or transaction content to Originator for validation," the text in the specification that explains step 90 reads:

> If the OID [originator identifier] is valid, the transaction administrator 60 determined the originator associated with the OID, transmits the transaction request and associated data to the originator 50 and **requests that the originator validate the transaction request containing the UTID at step 90**. The transaction administrator 60 may also validate amounts and credit limits at this time or upon receiving a response for the originator.

*Id.* (quoting patent '878, col. 5 lines 5-14) (Visa's emphasis). According to Visa, "step 90 in Figure 4 actually supports the Magistrate Judge's conclusion that the use of the UTID is required, and is not an optional choice alongside use of the 'transaction content' for validation purposes." *Id.* at 19.

While Visa opposes Plaintiffs' proposal to replace the phrase "amount of the transaction" with "transaction content," Visa does agree with Plaintiffs that the magistrate judge's use of the phrase "amount of the transaction" is incorrect, as it appears to require that the UTID for a transaction be compared with the amount of the transaction, which is unsupported by the patent specification. *Id.* at 19 n.11; *see also* Def. Obj. To First Report at 8. Visa asks the court to define the terms "validating" and "verifying" as: "The process used for comparing (a) the UTID that is generated by an originator and associated with a transaction with (b) the record of UTIDs for transactions generated by the originator, to confirm the identity of the originator and the transaction related thereto." Def. Obj. to First Report at 8. According to Visa, the magistrate judge's recommended claim construction "does not correctly capture the meaning that he appeared to intend based on his discussion of the issue." *Id.* Visa's proposed definition removes any reference to "transaction amount" or "transaction content" in the validation and verification process.

### b. Discussion

The court first addresses Plaintiffs' objections to the magistrate judge's recommended claim construction insofar as Plaintiffs propose the insertion of "/or" between the UTID and transaction content. To reiterate, Plaintiffs point to certain instances in the '878 patent discussing validation or verification using the UTID "and/or" the "transaction content." Pl. Obj. to First Report at 12. The court rejects Plaintiffs' argument and agrees with Visa that by inserting the "/or," the claim could be satisfied by a process of comparing the "transaction content," without using the UTID at all. Such a construction would be contrary to the specification and the prosecution history. *See* First Report at 5 (quoting Petition Statement):

> [None of the prior art patents] provid[ed] a validated electronic commerce transaction wherein a [UTID] is generated by an originator and ultimately, the electronic commerce transaction and its associated identifier are returned to the originator to provide for validation of the electronic commerce transaction prior to completion of the transaction. Neither [do prior patents disclose] a process for returning the identifier to the originator by a [TA] validating the identity of the originator and determining where to return the electronic transaction and identifier based on the validation.

In the Petition Statement, VIMachine "clearly and unmistakably" stated the point of distinction between the claimed invention and prior art, namely, a UTID generated by an originator and ultimately a UTID returned to the originator to provide for validation of the transaction.

In further support of inserting "/or," Plaintiffs argue that failure to insert the '/or" would violate the doctrine of claim differentiation, since claim 50 only references validation by reference to the UTID without a reference to the "amount of the transaction" or to "transaction content," whereas claim 52, which depends from claim 50, adds the limitation of also validating the "transaction data." The doctrine of claim differentiation is based on "the common sense notion that different words or phrases used in separate claims are presumed to indicate that the claims have different meanings and scope." *Andersen*, 474 F.3d at 369 (citation omitted). "To the extent that

the absence of such difference in meaning and scope would make a claim superfluous, the doctrine of claim differentiation states the presumption that the difference between the claims is significant." *Id.* (citation omitted). The written description and prosecution history, however, may "'overcome any presumption arising from the doctrine of claim differentiation.'" *Id.* (quoting with approval *Kraft Foods, Inc. v. Int'l trading Co.*, 203 F.3d 1362, 1368 (Fed. Cir. 2000)). Further, "the doctrine of claim differentiation cannot broaden claims beyond their correct scope, determined in light of the specification and the prosecution history and any relevant extrinsic evidence. . . . [C]laims that are written in different words may ultimately cover the same subject matter." *Id.* (quoting with approval *Mutiform Dessicants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1480 (Fed. Cir. 1998)); *see also Seachange International*, 413 F.3d at 1369 (doctrine of claim differentiation is "not a hard and fast rule and will be overcome by a contrary construction dictated by the written description or prosecution history."). The court determines that the written description and prosecution history overcome any presumption arising from the doctrine of claim differentiation. Based on the foregoing analysis, the court **overrules** Plaintiffs' objection to the magistrate judge's proposed definition insofar as Plaintiffs propose the addition of "/or" between the UTID and transaction data.

Further, and also based on the prosecution history set forth above, the court **overrules** Plaintiffs' proposal to replace "amount of the transaction" with "transaction content." In support of this proposed change, Plaintiffs rely on the same references as where the specification describes the use of the UTID "and/or transaction content" as part of the verification and validation process. Again, by choosing to limit the scope of the claimed invention in the Petition Statement, Plaintiffs cannot now seek an expansive interpretation which would effectively allow a claim to be satisfied by a process of comparing the "transaction content," without using the UTID at all.

The court **sustains** Visa's objection to the magistrate judge's definition of "verifying," "validating," and "variations thereof," as the magistrate judge's insertion of the phrase "the amount of the transaction" is at odds with his analysis. *See* First Report at 5-6. Visa's proposed claim construction is consistent with the magistrate judge's discussion regarding the prosecution history, and his express recognition that in the Petition Statement, the applicants distinguished their verifying process from that of prior patents. Thus, the court will replace the magistrate judge's proposed claim construction of "verifying," "validating," and "variations thereof," with that proposed by Visa, namely: "The process used for comparing (a) the UTID that is generated by an originator and associated with a transaction with (b) the record of UTIDs for transactions generated by the originator, to confirm the identity of the originator and the transaction related thereto." *See* Def. Obj. to First Report at 8.[12]

### G.    "*validation status*" as it appears in claim 1, step 4

Rejecting the parties' competing definitions of "validation status" as it appears in claim 1, step 4, the magistrate judge read the term in the context of the preceding three steps in claim 1 and recommended that "validation status" should be construed to mean: "That step in the process of authenticating an electronic commerce transaction in which the originator confirms to the transaction administrator the validity of the transaction based on the UTID." First Report at 6. Visa objects to the phrase in the magistrate judge's proposed definition, namely, "that step in the process of authenticating an electronic commerce transaction in which" and proposes replacing this phrase with the words "indication of whether." Def. Obj. to First Report at 9. The resulting construction of

---

[12]In response to Defendants' proposed construction, Plaintiffs argue that removal of any references to "transaction content" is "completely inconsistent with the specification and claims. Multiple times the specification describes the UTID and/or transaction content" as part of the verification/validation process." Pl. Reply to Def. Obj. to Second Report at 7. The court **rejects** Plaintiffs' argument based on prosecutorial disclaimer in the Petition Statement. *See supra.*

"validation status" following Visa's proposed change is: "indication of whether the originator confirms to the transaction administrator the validity of the transaction based on the UTID." *Id.* at 9-10. According to Visa, the words – "that step in the process of authenticating an electronic commerce transaction in which" – are semantically inconsistent with the fifth step (element) of claim 1 which recited: "*notifying* the transaction administrator *of a validation status* of the electronic commerce transaction based on the validation." *Id.* at 9 (Visa's emphasis). Visa contends that "[t]he context of this phrase requires communication of a result or conclusion of the validation process, not the conduct of a step of that process." *Id.* The court **sustains** Visa's objection to the magistrate judge's recommended claim construction of "validation status," determining it is semantically inconsistent with the fifth step of claim 1. Accordingly, "validation status" will be construed as: "indication of whether the originator confirms to the transaction administrator the validity of the transaction based on the UTID."

### H. Independent Claim 1 – *"notifying"*

As to the disputed term "notifying" in independent claim 1, the magistrate judge recommended that the word "notifying" be construed as: "Giving notice to." First Report at 7, 12. No objections have been filed with respect to the magistrate judge's proposed construction. After careful review of the magistrate judge's findings and conclusions, record, legal briefing, and applicable law, the court determines that the magistrate judge's proposed construction of "notifying" in independent claim 1 is **correct**, and it is hereby **accepted** as the court's construction of "notifying."

### I. Independent Claim 11

Noting that the parties had joined issue on the term "both" in claim 11 as it appears at column 13 lines 51-54, and that Defendants raised an issue with respect to an ambiguous term

appearing at line 54, namely, "translation," the magistrate judge recommended with regard to these disputes that:

> a. "The court should find that the use of the term 'translation' as it appears in this claim renders the said claim indefinite and therefore invalid as a matter of law pursuant to 35 U.S.C. § 112 ¶ 2." First Report at 12.

> b. "The court should find that the term 'requesting' as it appears in steps two and three of this claim is ambiguous and indefinite in failing to identify or specify which party to the electronic commerce transaction is required to initiate the request, rendering this claim invalid pursuant to 35 U.S.C. § 112 ¶ 2." *Id.*

> c. "In the alternative, if the court does not find claim 11 invalid on the basis of indefiniteness, . . . the phrase 'if the unique transaction identifier, the originator identifier and translation data are validated by both the originator and the transaction administrator' should be construed to require that both the originator and the transaction administrator validate the unique transaction identifier, the originator identifier and the <u>translation</u> data." *Id.* at 13 (original emphasis)

No objections have been filed with respect to the magistrate judge's proposed findings with regard to the invalidity of independent claim 11. After careful review of the magistrate judge's findings and conclusions, record, legal briefing, and applicable law, the court determines that the magistrate judge correctly found that "translation" and "requesting" in claim 11 are indefinite and/or ambiguous and correctly concluded that independent claim 11 is thereby rendered invalid pursuant to 35 U.S.C. § 112 ¶ 2. Accordingly, the court **accepts** his recommendation that independent claim 11 is invalid.

### J. Independent Claim 15 "*verifying if the originator generated the payment transaction*"

The magistrate judge recommended that the phrase "verifying if the originator generated the payment transaction" should be construed as:

> "The originator must determine that the originator generated the payment transaction by comparing (a) the unique transaction identifier that has been returned to the originator with (b) a particular transaction with a record of unique transaction identifiers maintained by the originator."

First Report at 13. Both parties have filed objections.

### 1. Plaintiffs' Objections

Plaintiffs' objections to the magistrate judge's proposed claim construction of "verifying if the originator generated the payment transaction" in independent claim 15 are similar to those Plaintiffs raised in their objections to the magistrate judge's recommended claim construction of "validating," "verifying," and "variations thereof." Plaintiffs again object to the magistrate judge's use of the term "UTID" in his proposed claim construction, and ask the court to replace "UTID" with "transaction content." Plaintiffs contend that the recommendations of the magistrate judge improperly suggest importing the UTID limitation into Claim 15, violating both the general rule that limitation from the specification are not imported into the claims and eliminating claim differentiation between claim 15 and claim 18. *See* Pl. Obj. to First Report at 13. Plaintiffs propose substituting the term "transaction content" for "UTID." Plaintiffs proposed claim construction of "verifying if the originator the originator generated the payment transaction" is: "The originator must determine that the originator generated the payment transaction by comparing the *transaction content* that has been returned to the originator with a record of *transaction content* maintained by the originator." Pl. Obj. to Second Report at 13 (emphasis added).

In support of the insertion of "transaction content" for "UTID," Plaintiffs contend the magistrate judge's recommended claim construction of claim 15 improperly imports the UTID limitation from the specification into claim 15 and violates the principles of claim differentiation by eliminating the differences between claim 15 and claim 18. Plaintiffs once again recite those instances in the specification where validation may be achieved by referencing the UTID "and/or the transaction content." *See supra* at 31 (summarizing Plaintiffs' arguments in support of inserting an "/or" into magistrate judge's proposed claim construction of "validating," "verifying" and "variants thereof.") Based on these instances, Plaintiffs contend that the magistrate judge's recommended claim construction, which does not include "transaction content," improperly imports the UTID requirement from the specification into the claims. Plaintiffs also argue that claim 15 does not explicitly embody a requirement that a UTID be used. Therefore, the magistrate judge should not read a UTID requirement into the claim. Pl. Obj. to First Report at 14 (and cases cited therein). With regard to Plaintiffs' contention that the magistrate judge's recommended claim construction is contrary to the doctrine of claim differentiation, Plaintiffs argue that claim 18 adds a limitation not present in claim 15 regarding a "unique identifier." "If a 'unique identifier' is equivalent to a 'unique transaction identifier,' then the Recommendation's construction eliminates the claim differentiation between independent claim 15 and dependent claim 18." *Id.* Finally, Plaintiffs recognize that a patentee may demonstrate its intention to limit the claim scope using "words or expressions of a manifest exclusion or restriction." *Id.* at 14-15 (citation omitted). Plaintiffs contend that such phrases would include claims that the invention "always" uses a UTID or "cannot be performed without" a UTID. *See id.* Plaintiffs argue that no such disclaimer occurred here, and that the language in the Petition Statement upon which the magistrate judge relied "merely expresses a preference for an embodiment using a UTID." *Id.*

In response, Defendants contend that the court should reject Plaintiffs' objections since the proposed modification (replacing "UTID" with "transaction content") "has no support in the specification and attempts to re-claim material that the applicants disclaimed in the prosecution history." Def. Resp. to Pl. Obj. to Second Report at 17. The court agrees.

As already set forth in detail above, in the Petition Statement, VIMachine distinguished the "pending claims" and the "claimed invention" over prior art based on the invention's use of a UTID. VIMachine applied the limitation globally, not just to "some claims." The magistrate judge, recognizing the importance of the intrinsic record, concluded that the Petition Statement "makes clear that the presence of a unique transaction identifier is a necessary element to the applicants' claims which distinguish them from prior art. Therefore, the materials before the court support a construction of claim 15 which requires the utilization of a unique transaction identifier." First Report at 9. The magistrate judge not only relied on the prosecution history, but also on the specification since "in the summary of the invention, the utilization of a unique transaction identifier was prominently noted as a method for minimizing the potential for fraud." *Id.* at 9 n.3 (citing col. 3 lines 23-31). As the court stated previously in overruling similar objections, it is confident based on the specification and the prosecution history, that it is not importing limitations from the specification into the claim.[13] *See generally Phillips*, 415 F.3d at 1323 ("[T]he distinction between using the specification to interpret the meaning of a claim and importing limitations from the specification into the claim can be a difficult one to apply in practice."). Moreover, any doubt is overcome by the prosecution history. *See supra*. Regarding the doctrine of claim differentiation, the court first notes that claim 18 contains a limitation beyond claim 15, namely, with regard to the

---

[13]The "Summary of Invention" describes the invention as using a UTID that has been generated by the originator. The "Abstract" on the first page of the '878 patent also states that "verification" of a transaction occurs through use of a UTID generated by a purchaser (originator).

first and second verification requests, claim 18 recites "attaching" the identifier with "the transaction order." As claim 18 is narrower on its face than claim 15, the doctrine of claim differentiation is not triggered. Moreover, as already stated above, the prosecution history in this case overcomes the presumption of claim differentiation. *See Seachange International*, 413 F.3d at 1369 (doctrine of claim differentiation is "not a hard and fast rule and will be overcome by a contrary construction dictated by the written description or prosecution history.").

Based on the foregoing analysis, the court **overrules** Plaintiffs's objections to the magistrate judge's recommended claim construction of "verifying if the originator generated the payment transaction" in independent claim 15.

### 2. Visa's Objections

In its objections, Visa contends that the magistrate judge's recommended construction contains a typographical error as to the placement of the "(b)." According to Visa, the "b" in the magistrate judge's proposed definition should be moved to after the phrase "a particular transaction," rather than before it. Visa's proposed claim construction thus reads as follows: "The originator must determine that the originator generated the payment transaction by comparing (a) the unique transaction identifier that has been returned to the originator with a particular transaction with (b) a record of unique transaction identifiers maintained by the originator." Visa argues that the magistrate judge's discussion and the prosecution history make clear that the UTID and transaction are returned together to the originator; thus both the UTID and transaction should be included under heading "(a)." The originator then compares the UTID for that transaction with the record or listing of UTIDs maintained by the originator for the transactions performed by that originator; thus the record of the UTIDs should be under heading "b." The court agrees that the comparison is between "(a) the UTID for a particular transaction that has been returned to the originator" and "(b) the

record of UTIDs for transactions performed by that originator." *See* Def. Obj. to First Report at 7.

Accordingly, the court **sustains** Visa's objection to the placement of "b" in the magistrate judge's proposed construction of "verifying if the originator generated the payment transaction" in independent claim 15. The court construes "verifying if the originator generated the payment transaction" in independent claim 15 as: "The originator must determine that the originator generated the payment transaction by comparing (a) the unique transaction identifier that has been returned to the originator with a particular transaction with (b) a record of unique transaction identifiers maintained by the originator."

### K.    Independent Claim 50  -  *"associating a UTID with the electronic transaction"*

The magistrate judge recommended that the phrase "associating a UTID with the electronic transaction" in independent claim 50 should be construed as: "the party originating the transaction connecting or linking up the unique transaction identifier created by the originating party to the transaction." First Report at 10. Plaintiffs object to the magistrate judge's recommended construction, arguing that independent claim 50 was purposefully drafted to claim the alternative embodiments where the UTID may be generated by a party other than the originator. Plaintiffs' proposed claim construction in place of the magistrate judge's is: "connecting or linking up the UTID to the transaction." Pl. Obj. to First Report at 15. Once again, Plaintiffs contend that the magistrate judge's recommended claim construction is contrary to the specification and that the magistrate judge erred in relying on the prosecution history to find that the originator must generate the UTID. Plaintiffs contend that the limiting statements in the Petition Statement, properly interpreted, taught "one of the ways the invention can be practiced[.]" *Id.* at 16. The court **overrules** Plaintiffs' objections. The magistrate judge's recommended construction is correct based on the Petition Statement, wherein VIMachine distinguished its invention over prior art because its

invention requires that the originator generates the UTID. Plaintiffs' argument that the Petition Statement merely stated a preference or one way the invention can be practiced is not persuasive. The Petition Statement is "clear and unmistakable" in distinguishing "the pending claims" and "claimed invention" from prior art based on the UTID generated by the originator. That an alternative embodiment in the specification allows a UTID to be generated by a TA does not sway the court otherwise. *See Rheox*, 276 F.3d at 1327 ("[W]here the prosecution history requires a claim construction that excludes some but not all of the preferred embodiments, such a construction is permissible and meets the standard of highly persuasive evidentiary support.").

## L. "To," "From" and "Through"

Rejecting the parties' arguments that "to," "from" and "through" should be specifically construed, the magistrate judge recommended that the terms "should be given their generally understood and customary meanings." First Report at 6. Visa objects to the magistrate judge's recommendation, seeking claim construction. Def. Obj. to First Report at 10. Visa contends that "to" should be construed to mean "directly arriving at and not by way of another named party unless otherwise recited in the claim; i.e., having a destination address of." *Id.* Visa proposes that "from" be defined as "originating from the sender [of the transmission], who is; i.e., having a source IP address of." *Id.* "Through" should be construed to mean "by way of a second transmission originating with a party with the source address of." *Id.* After proposing these definitions in place of the magistrate judge's reference to the ordinary and customary meaning of the terms, Visa states its belief that in the context of the '878 patent, Visa's proposed construction are the same as the generally understood and customary meanings of the words "to," "from," and "through." Visa concludes by stating that it proposed its constructions "in order to eliminate any possible ambiguity." *Id.*

The Federal Circuit reiterated in *Phillips* that words of a claim "are generally given their ordinary and customary meaning." *Phillips*, 415 F.3d at 1312 (quoting *Vitronics Corp.*, 90 F.3d at 582. Ordinary and customary meaning is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention[.]" *Id.* at 1313. "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314. This is just such a case. Moreover, the court agrees with Plaintiffs that Visa's proposed definitions are "remarkably detailed" and that Visa is attempting to "import[] very specific and lengthy technical definitions[]" onto these "simple phrases." Pl. Reply to Def. Obj. to Second Report at 6. Finally, Visa admits that its proposed construction are the same as the generally understood and customary meanings of the words "to," "from," and "through" and that it is merely seeking to avoid any ambiguity. Def. Obj. to First Report at 10. Accordingly, the court determines that the magistrate judge correctly concluded that "to," "from" and "through" "should be given their generally understood and customary meanings." First Report at 6. Accordingly, the court **overrules** Visa's objection.

**M.     "payment transaction"**

Visa objects to the magistrate judge's recommendation that the court apply the ordinary meaning of the term "payment transaction." *See* First Report at 10. Visa asks the court to adopt the following definition, taken from the patent claims and specification: "A transaction performed in paying bills, sending refunds on return merchandise, sending awards, etc." Def. Obj. to First Report at 17. In support of its argument that the magistrate judge should have construed the claim term, Visa points out that the specification expressly defines "purchase transactions" and "payment

transactions" as two distinct types of economic commerce.  Having reviewed the specification, and in light of the teaching of *Phillips*, the court **sustains** Visa's objection and **rejects** the magistrate judge's recommendation that the term "payment transaction" be given its ordinary meaning.  *See generally Phillips*, 415 F.3d at 1316 ("[O]ur cases recognize that the specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess. In such cases, the inventor's lexicography governs.").  Accordingly, the court **construes** payment transaction as: "A transaction performed in paying bills, sending refunds on return merchandise, sending awards, etc."

## VI. Defendants' Objections to Certain Statements in Report and Recommendation Regarding Claim Construction and Other Issues

Under this heading, Visa objects to: the use of the word "transmission data" on page four of the First Report as a typographical error, when the magistrate judge intended to refer to "transaction data"; the magistrate judge's statement in footnote 4 on page 14 of the First Report referring to "additional terms and phrases to which Defendant has not objected," since "there are no unopposed Plaintiff constructions"; the magistrate judge's rejection of Visa's contention that the phrase "said request" appearing in the first step of claim 15 ("said request including at least an originator identifier") renders the claim ambiguous and indefinite, and therefore invalid under 35 U.S.C. § 112; and the magistrate judge's recommendation that the court reject Visa's contention that certain claims (namely, 3, 15, 16, 18, 20, 25, 27, and 30) are invalid as indefinite under 35 U.S.C. § 112.  *See id.* at 11-14.

After careful review of the magistrate judge's findings and conclusions, record, legal briefing, and applicable law, the court **sustains** Visa's objection to the use of the word "transmission data" on page four of the First Report as a typographical error, when the magistrate judge intended

to refer to "transaction data." Accordingly, the court **replaces** the words "transmission data" with "transaction data.

After careful review of the magistrate judge's findings and conclusions, record, legal briefing, and applicable law, the court **overrules** Visa's objection to the magistrate judge's statement in footnote 4 on page 14 of the First Report referring to "additional terms and phrases to which Defendant has not objected," since "there are no unopposed Plaintiff constructions." Based on Plaintiffs' reply to Defendants' objections, the court has determined that Plaintiffs believe there were no unopposed constructions. Defendants believe they are the ones who proposed unopposed constructions. The record will speak for itself. The parties agreed to certain constructions in the Joint Claim Statement, and the magistrate judge recommended they be accepted. The court will accept this recommendation. The court determines all other proposed constructions as contested.

After careful review of the magistrate judge's findings and conclusions, record, legal briefing, and applicable law, the court **overrules** Visa's objection to the magistrate judge's rejection of Visa's contention that the phrase "said request" appearing in the first step of claim 15 ("said request including at least an originator identifier") renders the claim ambiguous and indefinite, and therefore invalid under 35 U.S.C. § 112. Defendants argued that "said request" in claim 15 is incomprehensible. The magistrate judge rejected Visa's assertion that the phrase "said request" in claim 15 was "ambiguous and indefinite," stating that Visa's argument "relies on a contorted construction of the term, divorced from the common understanding of its meaning[.] First Report at 10. The court determines that Visa has failed to present clear and convincing evidence to overcome the presumption of validity. *See* Pl. Reply to Def. Obj. to First Report at 8 n.9 (quoting *Budde v. Harley-Davidson, Inc.*, 250 F.3d 1369, 1376 (Fed. Cir. 2001) ("Because the claims of the patent are afforded a statutory presumption of validity, overcoming the presumption of validity

requires that any facts supporting a holding of invalidity must be proved by clear and convincing evidence.")).

For the same reason, the court **overrules** Visa's objection to the magistrate judge's recommendation that the court reject Visa's contention that certain claims (namely, 3, 15, 16, 18, 20, 25, 27, and 30) are invalid as indefinite under 35 U.S.C. § 112. Again, the court determines that Visa has failed to present clear and convincing evidence to overcome the presumption of validity. *Budde*, 250 F.3d at 1376.

## VII. Conclusion

For the reasons stated herein, the court **accepts in part and rejects in part** the magistrate judge's findings and conclusions. The court **accepts** the magistrate judge's recommendation that the court should construe those terms and phrases which appear in the patent, and to which the parties have stipulated as to the meanings, in accordance with the parties' Joint Claim Construction Statement filed on August 6, 2003, at Part 3. The court further **accepts** the magistrate judge's recommended claim construction to which the parties have not objected. Accordingly, the court **construes** "*originator*" as: "A party who originates the transaction for exchanging information documents or for initiating payment via an electronic check or a payment transaction for goods and services from a recipient." The court **construes** "electronic commerce" or "electronic commerce transaction" as: "a sequence of one or more related electronic transmissions that facilitate the purchase of and payment for goods and services between an originator and a recipient."

The court **accepts in part** the magistrate judge's recommended claim construction of the following disputed claim terms in the manner and for the reasons set forth herein: "unique transaction identifier" or "UTID"; "electronic commerce" or "electronic commerce transaction"; "validating," "verifying," and the "variations thereof" as they appear in the patent in the context of

the verification process";"validation status" as it appears in claim 1, step 4; "payment transaction"; "notifying" in independent claim 1; "verifying if the originator generated the payment transaction" in independent claim 15; and "associating a UTID with the electronic transaction" in independent claim 50.  The court **construes** these claim terms in patent '878 as follows:

- "*unique transaction identifier*" or "*UTID*" is to be construed as: "a code or label which specifically identifies an individual transaction initiated by an originator."

- "*validating*," "*verifying*," and the "*variations thereof*"as they appear in the patent in the context of the verification process are to be construed as: "the process used for comparing (a) the UTID that is generated by an originator and associated with a transaction with (b) the record of UTIDs for transactions generated by the originator, to confirm the identity of the originator and the transaction related thereto;

- "*validation status*" as it appears in claim 1, step 4 is to be construed as: "indication of whether the originator confirms to the transaction administrator the validity of the transaction based on the UTID."

- "*payment transaction*" is to be construed as: "A transaction performed in paying bills, sending refunds on return merchandise, sending awards, etc."

- "*notifying*" in Independent Claim 1 is to be construed as:"Giving notice to."

- "*verifying if the originator generated the payment transaction*" in independent claim 15 is to be construed as: "The originator must determine that the originator generated the payment transaction by comparing (a) the unique transaction identifier that has been returned to the originator with a particular transaction with (b) a record of unique transaction identifiers maintained by the originator."

- "*associating a UTID with the electronic transaction*" in independent claim 50 is to be construed as: "the party originating the transaction connecting or linking up the unique transaction identifier created by the originating party to the transaction."

The court **accepts** the magistrate judge's recommendation that independent claim 11 is invalid pursuant to 35 U.S.C. § 112, and **declares** claim 11 invalid. Finally, the court **rejects** the magistrate judge's use of the words "transmission data" on page four of the First Report as a typographical error, and **replaces** it with "transmission data." All other claim terms are to be given their ordinary and customary meaning.

**It is so ordered** this 10th day of September, 2007.

Sam A. Lindsay
United States District Judge